MY–T FINE CORPORATION v. SAMUELS et al.

No. 189.

Circuit Court of Appeals, Second Circuit.

Feb. 13, 1934.

Warfield & Brown, of New York City (Tracy R. V. Fike and F. P. Warfield, both of New York City, of counsel), for appellant.

Abberley & Bryde, of New York City (Arthur H. Amon, of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is the manufacturer of a confection of chocolate and sugar, used in making a kind of pudding, and sold in small cardboard boxes. The suit, which is founded upon diversity of citizenship, is to protect its make-up which the defendant is alleged to have copied. The boxes are about three and a half inches high, three inches wide, and an inch and a half thick; they contain four ounces of the confection. The plaintiff's predecessor put out the earliest box in 1915; on its front were the words, "My-T-Fine," printed in red; below, a black circle with a picture upon it of a French cook; below this, the word, "Chocolate," also in red. The whole outside of the box was striped with white and light green stripes; red stripes, about an eighth of an inch wide, ran along the horizontal edges of the top and bottom. The back contained at the top the legend in red, "My-T-Fine Pudding," below which on a white tablet were printed directions; the top, bottom and sides contained other printing in black and red.

This box the plaintiff took over in 1919 when it succeeded to the business and used until 1923. It is not the subject of this suit. Between 1923 and 1927 the body of the box was colored a solid green of deeper shade; red stripes were added to the four perpendicular edges; the black circle on the front was reduced to half its diameter, and the white tablet on the back was eliminated, leaving the directions on solid green. Two later forms, one from 1927 to 1929, and the other since 1929, differed from the second only in having on the front a white chevron on the upper part, which bore the words, "My-T-Fine," in red and black; and on the back at the bottom a white strip with a printed "note": "For thinner Puddings use more milk. For thicker

Puddings use less milk." The suit is to protect the box of 1929. By 1933 the plaintiff's sales had grown to an enormous total, over 100,000,000 in all; it had spent more than a million and a half dollars in advertisement; its trade had spread very extensively through the Union. To some extent its product has become known as the "Red and Green package," but by far the greater number of customers ask for it by its name, "My-T-Fine."

The defendants sell a similar product under the name, "Velmo." Before July 1, 1931, when they first introduced it into New York City, the body of their box, which was of substantially the same size as the plaintiff's, was solidly of about the same shade of green, but had no red stripes along the edges. At the top of the front was a black, instead of a white, chevron on which in large red letters was the word, "Velmo." Below in black was the word, "Chocolate," and below that in red on a white stripe, "Dessert." The back was also of green, on which the directions for using were printed in black; these were in part a literal copy of the plaintiff's. In July, 1931, the defendants added red stripes around all the edges of this box, of substantially the same width as the plaintiff's, and a white tablet on the back to contain the printed matter. They sold it very generally throughout the city of New York, so generally that they insist it must have come to the plaintiff's notice very soon after it was first put on sale. The suit was filed on July 7, 1933, and the plaintiff at once moved for a preliminary injunction. The judge, thinking the similarity between the packages too little, and the delay too long, denied the motion.

■■ It would be impossible on this record to say that any one who meant to buy the plaintiff's pudding has hitherto been misled into taking the defendants' by a mistake in the appearance of the box. Indeed such evidence is usually hard to get even after a trial, and upon this motion the affidavits are too hazy and unreliable, even if undisputed. The plaintiff has proved no more than that the boxes look a good deal alike, and that confusion may well arise; and were it not for the evidence of the defendants' intent to deceive and so to secure the plaintiff's customers, we should scarcely feel justified in interfering at this stage of the cause. We need not say whether that intent is always a necessary element in such causes of suit; probably it originally was in federal courts. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 S. Ct. 396, 34 L. Ed. 997; Elgin

National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365. But when it appears, we think that it has an important procedural result; a late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile. Prima facie the court will treat his opinion so disclosed as expert and will'not assume that it was erroneous. Fairbank Co. v. R. W. Bell Mfg. Co., 77 F. 869, 877 (C. C. A. 2); Capewell Horse Nail Co. v. Green, 188 F. 20, 24 (C. C. A. 2); Wolf Bros. & Co. v. Hamilton, 165 F. 413, 416 (C. C. A. 8); Thum Co. v. Dickinson, 245 F. 609, 621, 622 (C. C. A. 6); Wesson v. Galef (D. C.) 286 F. 621, 626. He may indeed succeed in showing that it was; that, however bad his purpose, it will fail in execution; if he does, he will win. Kann v. Diamond Steel Co., 89 F. 706, 713 (C. C. A. 8). But such an intent raises a presumption that customers will be deceived.

■ In the case at bar, it seems to us fairly demonstrated that the defendants have copied the plaintiff's make-up as far as they dared. We are not entirely clear that this was not true of their original box; but that is too doubtful to be decided on affidavits, and besides, its use has been discontinued anyway. At the very outset the directions were lifted bodily from the back of the plaintiff's box; and although the defendants were within their rights as to that, still the circumstance is relevant because it proves that the box had been before them when they designed their own make-up, and that it had been their point of departure. In addition they took solid green for the body, and put on a chevron; and while perhaps they did not choose a general combination of red and green, at least they adopted a red lettering. Whether or not they meant to get hold of the plaintiff's customers by that make-up, their next step was bolder, and put their intent beyond question; they added the red stripes at every edge; so that the real differences that remained were only in the name and the color of the chevron. As they had not the slightest original interest in the colors chosen and their distribution, they could only have meant to cause confusion, out of which they might profit by diverting the plaintiff's customers. This being the intent, the dissimilarities between the two do not in our judgment rebut the presumption.

■ The delay of two years before beginning suit does not seem to us of importance, even upon this application. There is indeed some question as to just when the plaintiff learned of the defendants' second box; but we see

nothing in that to give us pause; we are ready to assume that it learned of its appearance at once. Again, were it not for the intent to trade unfairly, we might hesitate, but advantages built upon a·deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed. Concededly nothing short of abandonment would be a defence at final hearing, Mcnendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60. No doubt less is necessary to defeat a preliminary injunction; delay alone may be enough, at least if the original use was innocent. Burke v. Bishop, 144 F. 838 (C. C. A. 2). But, considering the origin of the wrong here, we do not think that a delay of two years is a defence. Wesson v. Galef, supra, 286 F. 621.

The decree is reversed; the plaintiff may take an injunction against the use of the second box; i. e., that with the red edges. For the present and until trial, the earlier box will not be enjoined.