**PARKER LABORATORIES, INC., Plaintiff,**

v.

**PHARMACEUTICAL INNOVATIONS, INC., Defendant.**

**No. 91 CIV 3853 (KC).**

United States District Court, S.D. New York.

June 20, 1991.

Stevan J. Bosses, Nicholas N. Kallas and John J. Cotter of Fitzpatrick, Cella, Harper

& Scinto, New York City, for plaintiff, Parker Laboratories.

Lawrence I. Lerner and Arnold B. Dompieri of Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, N.J., for defendant, Pharmaceutical Innovations.

## ORDER

CONBOY, District Judge:

Plaintiff Parker Laboratories, Inc., ("Parker") has brought this action against Pharmaceutical Innovations, Inc. ("PI"), seeking equitable relief and punitive damages for trade dress infringement and unfair competition. Parker asserts that PI "blatantly copied" the distinctive, non-functional trade dress of Parker's widely known and highly successful AQUASONIC 100 ultrasound transmission gel. Memorandum in Support of Motion For Preliminary Injunction, ("Parker Mem."). Parker further claims that unless a preliminary injunction is granted prior to a trade convention in Boston scheduled for the period June 23–26, 1991, the Annual Conference and Exposition of the American Physical Therapy Association, Inc., it will suffer irreparable harm to its industry position and corporate reputation. The defendant, in arguments that are not entirely clear to the court, insists that there is no showing by the plaintiff of likelihood of confusion because a) the trade dresses of the two rival product containers are not in all respects identical, in that one is called "Duplasonic" and the other is called "Aquasonic" and b) no consumer confusion survey was submitted by the plaintiff. Defendant further argues that, in any event, no infringement could be made out because a) an agreement entered into by the parties in 1974, which expired in 1984, can be read to include the granting to the defendant of an implied license to manufacture the compound presently sold in the plaintiff's container and b) the plaintiff failed to adequately police its mark against other rival transmission gel manufacturers, thereby allowing the elements of its trade dress to fall into "the public domain." Remarks of Lawrence I. Lerner, Esq., counsel for defendant, at Hearing, June 18, 1991 (Minutes not yet available). *See also*, Defendant's Memorandum in Opposition to Preliminary Injunction ("PI Mem.").

There is no dispute that the parties are in direct commercial competition, that the central issue in this case implicates the trade dress and not the contents of the parties' product containers, that the imminent Boston trade show is an important, national convention for the industry with an expected attendance of approximately 3,000, at which both parties intend to vigorously promote their rival products, and that PI has already announced to the industry that it will display, promote, advertise and offer for sale the assertedly infringing product at that exposition.

More decisively, the defendant's President admitted on the witness stand that PI intentionally designed its "Duplasonic" container to mimic the trade dress of Parker's "Aquasonic" container, that PI omitted its own logo on the front of the container and substituted a reference to the name of the rival Parker, and that PI intends to aggressively promote its Duplasonic product at the Boston trade show in order to reduce Parker's competitive position vis a vis those in attendance at the show.

Based upon the affidavits filed and the testimony and exhibits submitted at the Hearing conducted on June 18, 1991, we make the following findings of fact:

1. Parker has, since the early 1960's, manufactured and sold throughout the United States an original ultrasound transmission gel developed under the trademark "AQUASONIC 100", which now constitutes a distinctive trade dress which is arbitrary, unique and non-functional. The advertising, promotion and sales throughout the United States of this product during this period has created a substantial reputation for quality and a large and invaluable reservoir of good will throughout the industry for Parker.

2. PI has intentionally copied the trade dress of Parker, has inserted ads in trade journals in which Parker advertises, and has specifically placed the principle elements of the Parker trade dress on its competing container in order to further its

goal of persuading the consumer that it is getting the same product as that marketed by Parker at a substantially reduced price.

3. A purported and ambiguous disclaimer placed by PI on its trade dress, which contains the Parker name, has the opposite effort of reinforcing the likelihood of confusion, in that PI's own name is relegated to a small type base position on the back of the container.

4. An objective appraisal and examination of the rival containers, photographed in exhibits 1 and 2, of the Affidavit of Martin Buchalter, dated June 10, 1991 and received in evidence as PXs 1 and 2, leads to the indisputable conclusion that Parker's trade dress has been almost wholly appropriated by PI, and that the likelihood of confusion as to origin of the products is substantial, and perhaps inevitable. We will make no further comparison of the color, design, graphics, wording, numerals, script and configuration of these separate elements combining to create a visual impact on the rival containers, as we have rarely seen such an obvious case of bold-faced misappropriation of another's commercial property.

5. Parker has never authorized, licensed or consented in any way to PI's use of Parker's distinctive, well-known and extremely valuable AQUASONIC 100 trade dress.

6. Likelihood of confusion has been established by Parker.

7. PI has failed to establish that Parker, through failure to police its mark and trade dress rights, has caused its trade dress to "fall into the public domain".

■ Based upon the testimony, affidavits and exhibits, specifically those relating to the volume, extent and duration of the advertising and promotion, and the blatant copying admitted to by PI, we conclude that Parker's trade dress has acquired secondary meaning. *RJR Foods, Inc., v. White Rock Corp.,* 603 F.2d 1058, 1059–60 (2d Cir.1979). *See also, Perfect Fit Industries, Inc. v. Acme Quilting Co.,* 618 F.2d 950 (2d Cir.1980); *My–T–Fine Corp. v. Samuels,* 69 F.2d 76 (2d Cir.1934). Fur-

thermore, intentional and direct copying gives rise to a presumption of a likelihood of confusion. *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 258 (2d Cir.1987).

■ Where there has been no demonstration by the second comer, here PI, that its purported disclaimer significantly reduces the likelihood of confusion, and we so find, such a disclaimer is insufficient as a matter of fact and law, to dispel the likelihood of confusion caused by the direct copying. *Home Box Office, Inc., v. Showtime/The Movie Channel Inc.,* 832 F.2d 1311, 1315–16 (2d Cir.1987).

■ In a preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship of a product or property establishes the requisite likelihood of success on the merits as well as risk of irreparable harm. *Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 708 (2d Cir.1982); *Le Sportsac, Inc. v. K Mart Corp.,* 754 F.2d 71, 74 (2d Cir.1985). Furthermore, on the factual record before us, we are satisfied that without the requested injunction, real and continuous damage, not repairable through any subsequent money damages awarded, would be done to Parker's hard earned reputation in the industry. Accordingly, it is hereby

ORDERED, that the defendant, its officers, directors, servants, agents, confederates and employees and each of them, and any and all persons in active concert or participation with them are preliminarily enjoined:

a) from manufacturing, distributing, circulating, advertising, promoting, selling, offering for sale, moving, shipping, sampling, or otherwise disposing of any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Parker's distinctive trade dress;

b) from using any simulation, reproduction, counterfeit, copy or colorable imitation of Parker's trade dress;

c) from using any false designation of origin or false description which can or which is likely to lead the trade or ultimate

end-users to believe that any product packaged, distributed or sold by defendant PI is in any manner associated or connected with Parker, or is sold, licensed, sponsored, approved or authorized by Parker; and

d) from engaging in any other activity constituting an infringement of Parker's trade dress, and it is further

ORDERED, that the plaintiff is hereby directed, pursuant to Fed.R.Civ.P. 65(c), to post with the Clerk of the Court an undertaking in the amount of $100,000 by 5:00 p.m. on June 20, 1991.

SO ORDERED.