Donald JACKREL Plaintiff(s),

v.

PARAGON SPORTING GOODS, Fabry Saranac Glove Company, Gates–Mills, Inc., Gordini USA and Wells Lamont, Defendant(s).

No. 99 CIV 10609 (NRB).

United States District Court, S.D. New York.

April 24, 2001.

Robert L. Epstein, Harold James, James & Franklin, L.L.P., New York City, for Plaintiff.

Mariano Schwed, Piliero, Goldstein, Sulis & Sullivan, New York City, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Donald Jackrel brings this action against the defendants Paragon Sporting Goods ("Paragon"), and Fabry Saranac

Glove Co. ("Fabry") for patent infringement pursuant to 35 U.S.C. §§ 271 and 281–85. Currently before the Court are the parties cross-motions for summary judgment. Defendant Fabry seeks a declaratory judgment of non-infringement and/or invalidity while plaintiff seeks a declaration of infringement. For the reasons that follow, plaintiff's motion is denied and defendant's motion for a declaration of non-infringement and for summary judgment is granted.[1]

## BACKGROUND

Plaintiff is the owner of U.S. Patent No. 4,520,056 entitled "Gas Permeable—Liquid Impermeable Membrane Confined Within A Recess," Defs.' Ex. 1 ("the '056 patent") and U.S. Patent No. 4,545,841 entitled "Method for Fabricating a Glove With An Intermediate Membrane Layer," Defs.' Ex. 2 ("the '841 patent"). Both patents relate to the creation of three-layer gloves ("Insert Gloves") that are designed to be waterproof, yet breathable, permitting moisture from the body to escape the glove while preventing water from outside from entering the gloves and reaching the wearer. Plaintiff alleges that the defendants manufactured and sold winter gloves that infringe the '056 and '841 patents.

Plaintiff commenced this action on October 18, 1999 against Paragon, a New York corporation that sells sporting equipment, including the gloves alleged to infringe the '056 and '841 Patents, in New York. Plaintiff then filed an amended complaint on February 24, 2000, adding defendants Fabry, Gates–Mills Inc. ("Gates"), Gordini U.S.A. ("Gordini") and Wells Lamont ("Wells"), corporations that manufacture the allegedly infringing insert gloves sold by Paragon.

Defendants Gates, Gordini and Wells have entered stipulations of settlement with the plaintiff and are no longer parties to this action. Likewise, defendant Paragon has entered into a stipulation with plaintiff not to appear further in this action but agreeing to be bound by the results reached herein. In addition, defendant Paragon filed cross-claims against the manufacturers for indemnification and for breach of warranty of title and breach of warrantee against infringement in violation of New York law. Def. Paragon's Answer to Am. Compl., Contercls. & Cross-cls., ¶¶ 36–40. Defendant Fabry filed an answer and counter-claim seeking a declaration of invalidity, unenforceability and/or non-infringement. Def. Fabry's Answer to Am. Compl. & Countercls., ¶¶ 36–41.

Both the '841 and '056 patents derive from the same application. Accordingly, both patents share identical written descriptions and diagrams, and vary only in their claims. For purposes of the parties' cross-motions for summary judgment, the relevant claims are claims one and four of the '841 patent and claim one the '056 patent. Defendants have conceded most elements of the claims at issue (e.g. that its gloves are constructed of three layers, that the intermediate layer is of a waterproof, breathable material, etc.) for purposes of these motions, leaving only the underlined limitations of these claims in dispute.

Claim 1 of the '841 patent provides:
1. A method for fabricating an article of clothing of the type adapted to surround a portion of the body of the wearer, comprising the steps of: forming an inner layer in the general given shape and size of the body portion; forming an outer layer having substantially said given shape and being slightly larger than said given size; forming an intermediate

patents would be invalid if we were to construe the relevant claims as plaintiff urges.

layer of gas permeable, liquid impermeable material, said intermediate layer being substantially said given shape and being of a size necessary to fit between said inner and outer layers; inserting said intermediate layer into the outer layer; inserting said inner layer into the outer layer so as to sandwich the intermediate layer there between; and *joining the inner and outer layers without interrupting the integrity of the body of the intermediate layer, or bonding same to said intermediate layer.*

(emphasis added).

Similarly, Claim 4 of the '841 patent provides:

4. A method for the fabrication of a waterproof, breathable hand covering comprising the steps of: forming an outer glove layer of a flexible, protective material; forming an intermediate glove layer of a thin waterproof and breathable sheet plastic; forming an inner glove layer; telescoping said glove layer one into the other to provide a hand covering having three layers; *joining said outer and inner glove layers together along their peripheral wrist portions, to thereby permit the body of said intermediate glove layer to remain entirely free and [ ] unattached between said outer layers.*

(emphasis added).

Finally, claim one of the '056 patent provides:

1. An article of clothing designed to surround a portion of the body comprising an outer layer, an intermediate layer, and an inner layer, said inner layer being situated within said outer layer, *means for joining said inner and outer layers to define a recess within which said intermediate layer is confined, without interrupting the integrity of the intermediate layer or bonding same to either of said inner or outer layers,* said intermediate layer comprising first and second gas permeable liquid impermeable membranes sealed to form an insert having the general shape of the portion of the body which the article is designed to surround.

(emphasis added).

In arguing that its products do not infringe plaintiff's patents, Fabry admits that it makes a number of three layer insert gloves that contain an intermediate waterproof breathable layer. Def.'s 56.1 Statement, ¶ 1, Def.'s Exs. A–E, Declaration of Donna Walenski, Senior Vice President of Imports for Fabry, ("Walenski Aff."), ¶ 3. Defendant argues, however, that its gloves do not infringe plaintiff's patents because the underlined claim limitations require an intermediate layer that remains unattached from the other two layers, while defendant's gloves do not possess such a free-standing, unattached and/or unbonded intermediate layer as required by plaintiff's patent claims, and thus lack this element. Memorandum in Support of Defendant Fabry's Motion For Summary Judgment ("Def.'s Mem."), pp. 2–3.

Since at least as early as the late 1980s, the intermediate layers of Fabry's gloves have been attached to one or more of the other layers of its gloves. Walenski Aff., ¶ 4. Initially, the intermediate layer was stitched to the other two layers at the wrist to prevent the intermediate layer from slipping and bunching up within the glove. *Id.,* ¶ 5. This initial attachment process was soon deemed insufficient because the fingers of the inner and/or intermediate layers would pull out when a perspiring wearer tried to take the gloves off. *Id.,* ¶ 6. To prevent these layers of the glove from turning inside-out, at least three fingers of the middle layers have been stitched to the inner and outer layers. *Id.,* ¶ 7. In addition, glue is used to bond together the fingers of the intermediate

and inner layers. *Id.*, ¶ 8. Thus, the intermediate layer of Fabry's glove is attached to the other layers by stitching at three (or more) fingers and sometimes by stitching at the wrist, and is attached to the inner layer by glue at the fingers. *Id.*, ¶¶ 9–11, Declaration of ˙Donald Jáckrel ("Jackrel Decl."), ¶ 13.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' " *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (quoting Fed.R.Civ.P. 56(c)). The Federal Rules of Civil Procedure mandate the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing the record, we must assess the evidence "in the light most favorable to the non-movant and . . . draw all reasonable inferences in [his] favor." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990). The mere existence, however, of an alleged factual dispute between the parties will not defeat a motion for summary judgment. In order to defeat such a motion, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505 (internal quotation omitted).

### B. Infringement Analysis

■ Infringement analysis is a two-step process in which we (1) determine the correct scope of the claims and then (2) compare the properly construed claims to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *See, e.g., Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247–48 (Fed.Cir.1998).

### 1. Construction of Patent Claims

"It is well-settled that in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.1996). "Such intrinsic evidence is the most significant source of the legally operative meeting of the disputed claim language." *Id.*

■ Claim construction "begins with the words of the claim." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971 (Fed.Cir.1999) (citing *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619–20 (Fed. Cir.1995)). The claim terms, in general, are to be given their customary and ordinary meaning. *Renishaw*, 158 F.3d at 1249. Courts may rely on dictionaries to help determine ordinary meaning of the claim terms. *Vitronics*, 90 F.3d at 1583 n. 6 (noting that although technically extrinsic to the patent document, judges are free to "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any def-

inition found or ascertained by a reading of the patent documents").

■ Along with the language of the claims themselves, we consider the specification, *Vitronics,* 90 F.3d at 1582 ("[I]t is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning."), which is "always highly relevant to the claim construction analysis" and usually dispositive, *id. See also, Bell,* 55 F.3d at 621 ("[I]t is legal error to construe a claim by considering it in isolation. A claim must be read in view of the specification of which it is a part."). The specification includes the written description portion of the patent and the drawings. 35 U.S.C. §§ 112–13. In looking to written description to construe the claim terms, we "may look to the written description to define a term already in a claim limitation" but may not "read a limitation into a claim from the written description." *Renishaw,* 158 F.3d at 1248.

Finally, we consider the prosecution history, which is "often of critical significance in determining the meaning of the claims." *Vitronics,* 90 F.3d at 1582. The prosecution history includes the record of proceedings before the Patent and Trademark Office ("PTO"). *Id.*

(a) *The '841 Patent*

1. *The Language of the '841 Patent Claims*

■ As noted previously, claim one of the '841 patent provides for a means of joining the inner and outer layers "without interrupting the integrity of the body of the intermediate layer, or bonding same to said intermediate layer." Thus, the body of the intermediate layer is not to be bonded to either of the surrounding layers, nor is its integrity to be interrupted. Like-

wise, claim four of the '841 patent provides for "joining said outer and inner glove layers together along their peripheral wrist portions, to thereby permit the body of said intermediate glove layer to remain entirely free and [ ] unattached between said outer layers." Accordingly, the inner and outer layers are to be joined as to leave the body of the intermediate layer "entirely free and unattached" from the other layers. Based on the plain language of these claims, one skilled in the art would conclude that the body of the intermediate layer of a glove constructed according to plaintiff's method must remain unattached from the inner and outer layers by stitching, bonding or other means attachment. The parties dispute the meaning of "the body" of the intermediate layer as used in these claims.

Defendant argues that both claims one and four of the '841 patent provide for a method of forming a three layer insert glove in which the intermediate layer is not attached to the inner and outer layers. In other words the defendant argues that "the body" of the intermediate layer refers to the entire intermediate layer. Plaintiff asserts that, as used in claims one and four of the '841 patent, the words "the body" should be construed to distinguish "the main or central portion of the intermediate layer from its edge or periphery." Pl.'s Mem., p. 14; Pl.'s Reply Mem., pp. 2–3. We find plaintiff's proposed construction contrary to the plain language of both claims. In contrast, we agree with defendant's construction—that "the body" refers to the entire intermediate layer—as supported by the plain meaning of the relevant claim language.

The primary definition of the word "body" is "the *entire* material or physical structure of an organism, especially of a human or animal." *The American Heritage Dictionary of the English Language,*

205 (Fourth Edition 2000) (emphasis added). *See also Webster's Third New International Dictionary of the English Language Unabridged* 246 (1993) (defining "body" as "the *total* organized physical substance of an animal or plant") (emphasis added). Accordingly, the plain meaning of "the body of the intermediate layer" as used in claim one of the '841 patent and "the body of said intermediate glove layer" as used in claim four of the '841 patent refers to the entire physical structure of the intermediate layer rather than to only a portion thereof.

In support of his argument that "the body" as used in claims one and four of the '841 patent should be construed as referring only to the main or central portion of the intermediate layer, as opposed to the extremities, plaintiff relies upon a secondary meaning of "body" as "the main part of a plant or animal body especially as distinguished from limbs and head: TRUNK b: the main, central or principal part. . . ." Pl.'s Mem. p. 14 (citing *Merriam–Webster's Collegiate Dictionary* ). *See also The American Heritage Dictionary of the English Language,* 205 (Fourth Edition 2000) (defining "body" as "2a. the trunk or torso of a human or animal . . . 5. The main or central part. . . ."); *Webster's Third New International Dictionary of the English Language Unabridged* 246 (1993) ("3. the trunk (as of a person, animal or plant) without appendages: the main central or principle part of something. . . ."). Plaintiff's proposed construction is contrary to the plain meaning of the relevant claim language.

Claim one provides for "joining the inner and outer layers without interrupting the integrity of the body of the intermediate layer, or bonding same to said intermediate layer." The "body of the intermediate layer" and "said intermediate layer"

both clearly refer to the entire intermediate layer. Were "the body" to refer only to a portion of the intermediate layer, as plaintiff asserts, the parallel language following the disjunctive would be "said portion of the intermediate layer," or some equivalent phrase, rather than "said intermediate layer" as used in claim one of the '841 patent. Moreover, construing "the body" as referring to only the central portion of the hand covering, without the fingers, would be meaningless in the context of a glove design intended to keep moisture away from an entire hand.

Likewise, the relevant language in claim four provides for "joining said outer and inner glove layers together along their peripheral wrist portions, to thereby permit the body of said intermediate glove layer to remain entirely free and [ ] unattached between said out layers." Were "the body" to refer only to a portion of the intermediate layer, there would be no reason to specify that only the outer and inner glove layers are to be joined "along their peripheral wrist portions" to leave the body intermediate layer "entirely free and [ ] unattached." Indeed, under plaintiff's proposed construction, all three layers could be attached "along their peripheral wrist portions" leaving "the body" of each layer unattached, in contravention of the clear language of claim four of the '841 patent.

While we believe the plain meaning of the claim limitations at issue are clear, even assuming "the body" is somewhat imprecise given the alternative meanings available, the limitation language is not ambiguous because the written description and prosecution history provide overwhelming evidence as to the proper meaning of the term. *Cf. Renishaw,* 158 F.3d at 1251 (construing imprecise claim term in light of written description). Accordingly, in addition to the plain meaning of

the claim limitations, we examine both the specification and the prosecution history which, as discussed below, confirm that "the body" refers to the entire intermediate layer in both claims one and four of the '841 patent.

### 2. The Specification

Plaintiff's description of prior art [2] notes that the use of waterproof layers in the prior art did not permit moisture from the glove wearer to escape and that the use of breathable layers suffered from different disadvantages. Specifically, plaintiff notes that "any small puncture or bonding of the surface" of a breathable layer "will result in loss of water resistance" and further provides that "bonding or stitching of the breathable layer substantially reduces its ability to function effectively." '841 Patent, col. 1, lns. 33–37. Plaintiff identifies the general purpose of his invention as providing a breathable, waterproof glove with the advantages of that material, but without the disadvantages of the prior art that used a breathable layer. *See id.*, col. 1., lns. 41–45.

To this end, plaintiff's summary of his own invention provides for a "unique glove/garment construction in which a breathable, waterproof layer of thin polyurethane or expanded polytetrafluorethylene or any thin plastic which contains microscopically small pore openings therethrough *is free-standingly sandwiched between an outer protective layer and an*

inner finger engaging layer." *Id.*, col. 1, lns. 41–52 (emphasis added). Moreover, plaintiff's summary of his invention further provides that *"[t]he sandwiched layer is entirely free of either of the other layers." Id.*, col. 1, lns 52–53 (emphasis added).

Plaintiff's description of his invention as containing an intermediate layer that is "free-standingly sandwiched" between the inner and outer layers, and further depicting the intermediate layer as "entirely free of either of the other layers" clearly supports our construction of the relevant claim language as referring to the entirety of the intermediate layer rather than to merely a portion thereof.

In addition, plaintiff's description of the preferred embodiment of his invention contains the following passages which further buttress our construction of the relevant claim language as referring to the entire intermediate layer:

> The inventor has discovered, however, that when used in the construction of garments *these plastic films lose their waterproof qualities when subjected to adherence to another layer as by bonding or cementing or by being subjected to penetration due to stitching.* It has been found that no matter how restrictive the stitching, there is passage of water through the membrane.

*Id.*, col. 3, lns. 1–7 (emphasis added).

> It should be noted that *the intermediate layer 36 is not joined to either of the*

---

2. The Description of the Prior Art contained in the '841 patent provides:

> In the field of waterproof materials and garments, it has been the general practice to provide an outer water impermeable layer joined to an inner insulating layer. Such garments have been unsatisfactory in that body moisture is not permitted to escape and condenses within the garment leaving the inner surfaces proximate the wearer moist and in most cases wet. In order to overcome the foregoing deficiencies a

breathable water resistant layer has been substituted for the waterproof material and generally bonded and/or stitched to another layer. *Likewise, the addition of a breathable layer has proved unsatisfactory in that, since the layer must be extremely thin any small puncture or bonding of the surface will result in loss of water resistance. Bonding or stitching of the breathable layer substantially reduces its ability to function effectively.* '841 Patent, col. 1, lns. 23–37 (emphasis added).

*other layers and that is its free of the stitched area 44 so that is has not been punctured or bonded. The intermediate glove layer is therefore entirely free-standing with respect to the other two layers.* In fabricating any type of garment, whether a glove or otherwise, *the waterproof, breathable layer must be and remain entirely freestanding.*

*Id.,* col. 3, lns 28–36 (emphasis added).

Clearly, the foregoing inventive concept can be applied to any wearing apparel such as clothes, shoes, hats and similar articles by merely employing three plies with *intermediate ply being of the plastics described above and assuring that it is entirely free-standing between the other plies.*

*Id.,* col. 3, lns 37–42 (emphasis added).

The above-quoted passages from the description of the preferred embodiment are simply inconsistent with the construction plaintiff now advances. Plaintiff's repeated statements throughout the specification concerning the free-standing nature of the intermediate layer and the importance of that layer remaining unattached to avoid compromising its waterproof properties reinforce our construction of the relevant claim language. Reference to the diagrams support the same conclusion. We now turn to the prosecution history.

### 3. *The Prosecution History*

During the prosecution of his patents, plaintiff repeatedly relied upon the free-standing nature of the intermediate layer in his glove design in distinguishing the prior art. For example, plaintiff stated, "Palicki [a prior art reference] does not teach or disclose a breathable waterproof layer which is free standing with respect to the outer and inner layers . . . ." Def.'s Ex. 4, Prior Art Statement, filed September 15, 1982, ("Prior Art Statement") p. 2, and "Simon [another prior art reference]

does not disclose a breathable waterproof layer nor teach that this layer can not be sewn or bonded to any adjacent part of the glove in order to maintain and assure waterproof integrity . . . ." Prior Art Statement, p. 3. *See also* Prior Art Statement pp. 2–4 (distinguishing other prior art references that did not disclose the use of a freestanding intermediate breathable waterproof layer). Moreover, the Prior Art Statement expressly states that plaintiff's "claimed glove structure *does preclude stitching of . . .* a free intermediate breathable water-proof layer . . . ." *Id.* p. 2 (emphasis added).

In addition, plaintiff made the following statements to the PTO in response to requests to divide plaintiff's proposed patent applications:

While it is true that Claims 1–6 are directed to a glove, Claim 8 is directed to a garment, and Claims 9–12 are directed to an article, each of these items have a structure which embodies a single inventive concept, that is, the item includes an outer covering layer, an inner lining layer, and an intermediate layer which is waterproof and breathable. The layers are telescopically received within each other and *the intermediate layer is entirely free of any attachment to the other layers.* The method claims, Claims 7 and 13–15, are directed at making an item having this structure. Since *a single inventive concept is set forth in each group of claims,* it is respectfully submitted that *only a single invention is involved . . . .*

Def.'s Ex. 5, Plaintiff's June 8, 1983 Amendment, pp. 1–2 (emphasis added).

All of the claims in this application are related in that they include a single inventive concept, namely, the use of an entirely free-standing and unattached insert made of water-proof breathable material. This being the case, it is be-

lieved that all of the claims should remain in a single application. . . . However, whether the layers are attached by sewing or by an adhesive is not a material difference with respect to this invention because *no matter how the layers are attached, the intermediate layer still remains unattached, and this is the important concept of the invention.*

Def.'s Ex. 6, Plaintiff's April 18, 1984 Amendment, p. 2 (emphasis added).

Accordingly, the prosecution history, like the specification, supports our conclusion that the plain meaning of the relevant language of claims one and four of the '841 patent refer to the entire intermediate layer, and that the claim language means that the intermediate layer must remain unbonded, unstitched and otherwise unattached from the other layers of the glove.

#### (b) *The '056 Patent*

#### 1. *Claim Language*

Claim one of the '056 patent calls for the creation of an article of clothing comprised of three layers with a "means for joining [the] inner and outer layers to define a recess within which said intermediate layer is confined, without interrupting the integrity of the intermediate layer or bonding same to either of said inner or outer layers . . . ." '056 patent, col. 4, lns. 14–25. Thus, like the '841 patent, the plain meaning of claim one of the '056 patent calls for joining the inner and outer layers in a manner that neither interrupts the integrity of the intermediate layer nor bonds the intermediate layer to either the inner or outer layers. That is, the intermediate layer must remain unattached to the other two layers.

The specification of the '056 patent is virtually identical to that of the '841 patent, discussed *infra,* and includes the same description of the prior art and summary of the invention. *Compare* '056 patent, col. 1, lns. 18–34,36–49 *with* '841 patent, col. 1, lns 23–37,41–53. Moreover, the description of the preferred embodiment of the '056 patent contains passages identical to those from the preferred embodiment of the '841 patent discussed previously. *Compare* '056 patent, col. 2, lns. 65–69, col. 3, lns. 1–3,26–34, col. 4, lns 1–6 *with* '841 patent, col. 3, lns 1–7,28–36,37–42. Accordingly, the specification of the '056 patent supports our construction of the relevant claim language.

Likewise, as the '056 patent and the '841 patent share the same prosecution history, plaintiff's statements relying upon the freestanding nature of the intermediate layer in his glove design to distinguish the prior art are equally applicable the construction of claim one of the '056 patent as they are to the '841 patent's claims, and further support our construction of the relevant language in the '056 patent. *See* Prior Art Statement, pp. 1–4; Def.'s Ex. 5, pp. 1–2; Def.'s Ex. 6, p. 2 ("no matter how the layers are attached, the intermediate layer still remains unattached, and this is the important concept of the invention.").

Accordingly, we construe the relevant claim limitation of the '056 patent to require a means of attaching the inner and outer layers around the intermediate layer without bonding or otherwise attaching the intermediate layer to either of the other layers of the glove. Thus, one skilled in the art would conclude that the relevant claims of *both* the '056 and '841 patents require an intermediate layer that is not attached to the other layers.

#### 2. **Comparison of Claims to Accused Device**

#### (a) *Literal Infringement*

■ Literal infringement requires that the accused device contain every element

of the patented device exactly. *See, e.g., KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1358 (Fed.Cir.2000) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the properly construed claim reads on the accused device exactly.") (citation and internal quotation marks omitted). Having construed the relevant limitations in plaintiff's patents to require an intermediate layer that is unbonded and otherwise unattached from the inner and outer layers, it is clear that no question of fact remains with respect to literal infringement.

### 1. No Literal Infringement of the '841 Patent

■ Defendant's gloves do not join their inner and outer layers "without interrupting the integrity of the body of the intermediate layer or bonding same to [the body of the intermediate layer]" as required by claim one of the '841 patent.[3]

Nor do defendant's gloves join the inner and outer layers in a manner that permits "the body of [the] intermediate layer to remain entirely free and [ ] unattached" as required by claim four of the '841 patent.[4] There is no dispute that the intermediate layer of defendant's glove does not "remain entirely free and unattached." Def.'s 56.1 Statement, ¶¶ 4–11, Def.'s Exs. A–E, Jackrel Decl. ¶ 13. Accordingly, there is no literal infringement of the claim four of the '841 patent.

Plaintiff contends that defendant's addition of stitching and glue bonding the intermediate layer to the other layers of its glove is merely an improvement which does not preclude a determination of infringement. Pl.'s Mem. pp. 6–16. While it is true that "one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device," *Stiftung v. Renishaw PLC.,* 945 F.2d 1173, 1178 (Fed.Cir.1991) (citing *A.B. Dick Co. v. Burroughs Corp.,* 713

---

**3.** It is clear to us that the wrist and finger stitching and gluing utilized in defendant's gloves "interrupts the integrity" of "the body of the intermediate layer" as we have construed that language. Plaintiff's argument to the contrary, Pl.'s Mem., pp. 14–15, Pl.'s Reply Mem., pp. 5–6, is contrary to the plain meaning of the claim language and to plaintiff's statements in the specification and prosecution history. *See, e.g.,* '841 patent, col. 1, lns. 36–53 ("Bonding or stitching of the breathable layer substantially reduces its ability to function effectively .... [to avoid this] ... [t]he sandwiched layer is entirely free of either of the other layers."). Moreover, even assuming arguendo that defendant's stitching and/or "minimal gluing," Pl.'s Reply Mem. p. 5, does not meaningfully interrupt the integrity of the intermediate layer, there is no dispute that the intermediate layer is "bonded" to each of the other layers via stitching and/or gluing. Def.'s 56.1 Statement, ¶¶ 4–11, Def.'s Exs. A–E, Jackrel Decl. ¶ 13. Thus, the defendant's gloves do not literally infringe claim one of the '841 patent.

Likewise, we reject plaintiff's argument that defendant's claim on its packaging materials that its gloves are waterproof, Pl.'s Mem., ¶ 15, Pl.'s Ex. 1 (defendant's gloves, with tags) should prevent defendant from arguing that the stitching and gluing of its glove's intermediate layer take it outside the scope of plaintiff's patent. Whatever the legal consequences of defendant's claims on its packaging materials may be, they affect neither the proper construction of plaintiff's patent claims nor the undisputed fact that defendant's product does not infringe plaintiff's patents.

**4.** We reject plaintiff's contention that his patents are nevertheless infringed because defendant's glove contains an intermediate layer that was "completely freestanding at one time," Pl.'s Reply Mem. p. 1. *See also* Pl.'s Reply Mem., pp. 4–5. The literal claim language, "remain entirely free and unattached" as well the rest of the intrinsic evidence discussed previously makes it perfectly clear that intermediate layer is to remain freestanding in this finished glove. Plaintiff's proposed construction would eviscerate the limitation in the claim language.

F.2d 700, 703 (Fed.Cir.1983), *cert. denied* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984)), here not every element of plaintiff's claims are found in the accused device. The addition of stitching and gluing bonding the intermediate layer to the other layers of defendant's glove is not merely an improvement or additional element, but is expressly prohibited by the language of plaintiff's claims. Thus, as all elements of plaintiff's patent claims are not present in the accused device, defendant's gloves do not literally infringe the claims of the '841 patent.

### 2. *No Literal Infringement of the '056 Patent*

Likewise, defendant's gloves do not literally infringe claim one of the '056 patent. The relevant language of claim one of the '056 patent is written in "means plus function" form. In order to meet a means-plus-function limitation, the accused device "must (1) perform the identical function recited in the means limitation and (2) perform that function using the structure disclosed in the specification or an equivalent structure." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1578 (Fed.Cir.1993).

According to the '056 patent claim, the function to be accomplished is "to define a recess within which [the] intermediate layer is confined, without interrupting the integrity of the intermediate layer or bonding same to either of said inner or outer layers" so as to ensure that the

intermediate layer retains its gas permeable, liquid impermeable properties.[5] To accomplish this function, plaintiff's patent uses the means of wrist stitching that connects the inner and outer layers without connecting either layer to the intermediate layer and without any additional stitching or gluing that might interrupt the integrity of the intermediate layer or bond the intermediate layer to the other layers. The corresponding structure in defendant's glove includes stitching at the wrist that sometimes penetrates the intermediate layer, stitching at the fingertips that always bonds the intermediate layer to the other layers, and gluing at the fingertips that always bonds the intermediate layer to the inner layer.[6] Thus, even assuming arguendo that the function to be performed by defendant's structure is the same, and assuming further that the stitching and gluing in defendant's glove does not "interrupt the integrity of the intermediate layer," defendant's glove does not utilize the same means, as it does not join the inner and outer layers "without ... bonding" the intermediate layers to those other layers as required by the claim limitation. Accordingly, there is no infringement of the '056 patent because every element of claim one is not present in the accused product.

### (b) *Infringement Under the Doctrine of Equivalents*

A device that does not literally infringe a claim may nonetheless infringe under the

---

**5.** Plaintiff asserts that the function of his insert is to prevent water from reaching the hand and to allow perspiration to evaporate from the hand. Pl.'s Mem., p. 18. Even accepting this definition, as noted below, the accused device does not use a substantially equivalent means of accomplishing this goal.

**6.** While plaintiff argues that the relevant structure for comparison is only the wrist stitching of the accused device, Pl.'s Reply Mem., p. 3, we note that "means for joining"

as used in plaintiff's claim, is not restricted to wrist stitching. According to the plain meaning of the claim language, stitching at the fingers, and gluing, are means for joining. Moreover, even focusing solely on the wrist stitching, there is no dispute that the accused device does not always join the inner and outer layers without bonding the intermediate layer to them, and thus does not satisfy the relevant claim limitation.

doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device. *See, e.g., Sage Products, Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997) (citation omitted). However, the doctrine of equivalents "cannot be used to erase meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Conopco Inc. v. May Department Stores Co.,* 46 F.3d 1556, 1562 (Fed.Cir.1994) (internal quotations and citation omitted), *cert. denied* 514 U.S. 1078, 115 S.Ct. 1724, 131 L.Ed.2d 582 (1995).

To infringe under the doctrine of equivalents, the accused device must "contain each limitation of the claim or its equivalent." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1582 (Fed.Cir. 1996). Because we have construed each of the relevant claim limitations as requiring an intermediate layer that is not bonded to the other layers of the glove, the accused device, which does not have a freestanding intermediate layer, cannot contain each limitation of plaintiff's claims or equivalents of those limitations, and thus cannot infringe under the plaintiff's patent claims under doctrine of equivalents.[7]

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is denied and defendant's motion for a declaration of non-infringement and for summary judgment is granted. Since there is no longer a federal issue before the Court, we decline to exercise pendant jurisdiction over the state law cross-claims. Accordingly, the state law claims are dismissed without prejudice and the Clerk of the Court is directed to close the above-captioned case.

**IT IS SO ORDERED.**

---

**7.** Given our resolution of the doctrine of equivalents issue, we need not reach the issue of prosecution history estoppel.